**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELSA CRUZ and FRANCES CRUZ, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF SAMUEL ANGEL CRUZ | Civil Action No. |
| Plaintiffs, vs. | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| THE CITY OF NEW ROCHELLE, P.O. STEVEN GEERTGENS, and POLICE OFFICERS JOHN DOES, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**13 CV   7432**

JUDGE SEIBEL

By and through their attorneys, Randolph M. McLaughlin, Debra S. Cohen, Jeffrey M. Norton, Mayo Bartlett and Abdulwali Muhammad, Plaintiffs Elsa Cruz and Frances Cruz allege upon knowledge, information, and/or belief as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiffs Elsa Cruz and Frances Cruz, Co-Administrators of the Estate of Samuel Angel Cruz, seek relief for the violation by Defendants of Mr. Cruz's rights, privileges, and immunities secured by 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York.  Additionally, Plaintiffs assert claims on behalf of the Estate of Samuel Angel Cruz arising under state law, including, but not limited to, wrongful death. Plaintiffs also seek to recover for their individual damages, arising under state law, including, but not limited to, loss of consortium, loss of companionship, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

2.      It is further alleged that the Defendant City of New Rochelle ("City") failed to adopt adequate policies and procedures to safeguard emotionally disturbed persons with whom police officers would likely come in contact.  As a result of the failure to adopt adequate policies as aforesaid, said Defendant failed to train or supervise its officers in properly responding to incidents involving emotionally disturbed persons. The failure to adopt such policies and/or the inadequacy of the policies that were adopted was likely to result in constitutional deprivations. Moreover, the failure to adopt adequate policies, and to train or supervise its police officers in how to properly handle situations involving emotionally disturbed persons, evidenced the City's deliberate indifference to the constitutional rights of Samuel Angel Cruz, and resulted in the deprivation of his rights.

3.      As a remedy for the constitutional violations alleged herein, Plaintiffs seek damages for severe emotional and psychological distress, loss of consortium, and loss of companionship, all due to the actions and/or negligence of agents or employees of the City of New Rochelle and New Rochelle Police Department.  In addition, Plaintiffs seeks an injunction requiring the City to institute and implement effective policies and procedures with respect to police responses to situations involving emotionally disturbed persons ("EDP") and to adopt the Crisis Intervention Team model, a collaborative program involving mental health professionals, or a similar program for responding to EDP calls.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343. Plaintiffs further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367 to hear and decide claims arising under state law.

5.     Venue in the Southern District of New York is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

6.     Plaintiff Elsa Cruz is a resident of the United States and was married to Samuel Angel Cruz. She is a Co-Administrator of the Estate of Samuel Angel Cruz ("Estate"). She brings this action on behalf of the Estate and on her own behalf.

7.     Plaintiff Frances Cruz is a citizen of the United States and a resident of the Commonwealth of Puerto Rico, and the daughter of Samuel Angel Cruz. She is a Co-administrator of the Estate. She brings this action on behalf of the Estate and on her own behalf.

8.     Defendant The City of New Rochelle ("City") is a duly constituted municipal corporation of the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the New Rochelle Police Department ("NRPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

9.     Defendant Police Officer Steven Geertgens is a police officer employed by the City. On information and belief, during the course of his employment by the City, he fired the bullet that killed Samuel Angel Cruz. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

10.     Police Officers John Does are and/or were, at all times relevant herein, police officers, whose names are not presently known to Plaintiffs, and employees and agents of the

NRPD. At all times relevant to the facts of the Complaint, said Defendants were acting under color of law and within the scope of their employment by the City. Said Defendants are sued in their individual and official capacities.

### FACTUAL ALLEGATIONS

11.     Samuel Angel Cruz, 48, was an artist who moved to New Rochelle from Puerto Rico nine years ago. Mr. Cruz suffered from bipolar disorder and schizophrenia, and moved to the United States where he believed that he would be able to obtain the necessary treatment for his mental health disorders.

12.     Plaintiff Frances Cruz was very close with her father. Frances often visited her father's home, and they spoke weekly on the telephone. Not only was Mr. Cruz generally supportive and nurturing of Frances, but they also shared artistic passions, for which Mr. Cruz provided Frances with guidance and training. Frances is currently in college pursuing a career in art, and Mr. Cruz continued to provide her with financial support as a college student.

13.     Friends and neighbors described Mr. Cruz as a mild-mannered, kind, and gentle person.

14.     The incident complained of herein occurred on May 26, 2013, at approximately 1:30 p.m., while Mr. Cruz was at his home located at 18 Hickory Street, New Rochelle, New York. At or about the time of the incident, Plaintiff Elsa Cruz was present in the immediate vicinity of the apartment where decedent resided.

15.     On or about May 26, 2013, Elsa Cruz arrived at her husband's apartment door and Mr. Cruz would not allow her in. Mrs. Cruz had recently returned from a one month trip visiting her family in the Phillipines. On information and belief, while Mrs. Cruz was away, Mr. Cruz may have stopped taking his medication.. Worried about his mental state and seeking medical

attention for her husband who was alone in the apartment, Elsa Cruz called 911.

16.     Police Officers from New Rochelle arrived at Mr. Cruz's apartment and spoke with him through his locked door. During the incident, the police officers repeatedly and loudly banged on Mr. Cruz's door, causing him great alarm and to fear for his life.

17.     Elsa Cruz remained present at all times, advising the police officers that her husband was bipolar and schizophrenic and that he was in a disturbed mental state.  She repeatedly asked the police to allow her to speak with her husband, but her requests were denied.

18.     Instead of taking appropriate measures, the police officers escalated the situation by forcing open Mr. Cruz's door. Then, without justification or cause, Officer Steven Geertgens discharged his firearm striking Mr. Cruz in the chest, ultimately causing his death.

19.     On information and belief, medical treatment was withheld from Mr. Cruz for approximately one hour after he was shot.  Elsa Cruz was within earshot at the time of the shooting and was given no explanation for the delay in treatment.

20.     As a result of their interactions with Samuel and Elsa Cruz, the police officers at the scene perceived Mr. Cruz as being an emotionally disturbed person.  Instead of taking the proper precautions, the police officers escalated the situation. The behavior of the officers increased Mr. Cruz's fear and apprehension, causing him to reasonably fear that the officers were there to harm him.

21.     At no time was the force or degree of force used by the officers justified by the circumstances. The use of force employed was excessive and unwarranted. Mr. Cruz perceived that the officers posed a threat to his life, and feared that they were present at his apartment to accomplish that result. At no time did any of the officers or supervisors present take the appropriate steps that could have avoided the harm inflicted and prevented Mr. Cruz's death.

22.     Throughout the facts alleged herein, Plaintiff Elsa Cruz was present in close proximity to the apartment of Mr. Cruz. As a result of her presence at the scene of the incident recounted herein, and witnessing the conduct aforementioned, Plaintiff Elsa Cruz was placed in great fear and apprehension for the safety of her husband, Mr. Cruz. The actions of said officers caused Elsa Cruz emotional distress as she witnessed their actions, which ultimately caused the death of her husband.

23.     In addition, Plaintiff Frances Cruz suffered loss of nurture, care, guidance, and training, and loss of financial support due to the actions and/or negligence of agents or employees of the City and NRPD.

24.     The policies and procedures, training, and supervision of the City and NRPD were inadequate to handle or address the situation at Mr. Cruz's apartment and/or the officers and their supervisors were improperly trained or not trained on how to handle the type of situation that they confronted at the apartment. Said policies, training, and/or failure to adopt policies or to adequately train its employees aforementioned resulted in the death of Mr. Cruz and the injuries to Elsa and Frances Cruz herein.

### Emotionally Disturbed Persons Police Policies and Procedures

25.     The death of Mr. Cruz was the direct result of the use of deadly force in a police encounter with an EDP. Where officers could have deployed protective shields and used non-lethal devices to ensure the safety of all those present – they did not. Where officers could have requested assistance from an interpreter if needed and/or sought assistance from the subject's family or friends – they did not.

26.     Upon information and belief, the City has failed to adopt adequate policies regarding interactions between police officers and persons in emotional crisis. As a result of the

failure to adopt such policies, the City has failed to adequately train its officers in the proper methods to respond to persons in emotional crisis. As a result of the foregoing, the City does not adequately supervise, and did not on this occasion, its officers in responding to EDPs.

27. Additionally, the City has refused to adopt best practice policies that are in use in several cities across the country. Those cities that have adopted a model more focused on training officers in mental health disciplines and involving mental health professionals have experienced less violence and death in police encounters with EDPs.

28. In 1987, when a Memphis Police Department ("MPD") officer shot and killed a mentally ill person, the MPD decided to revisit its policies for handling EDP calls and to reach out to mental health professionals and the mentally ill themselves and their families, to craft a new strategy.

29. The result, soon termed the "Memphis Model," was a policy that involved mental health professionals. It relied heavily on Crisis Intervention Teams, or CITs, composed of police officers who had volunteered to undergo between 40 and 80 hours of extra training in responding to EDP calls. Enough Memphis officers were trained that when an EDP call came through, at any hour and in any part of the city, dispatchers could refer the call to a Crisis Intervention Team – as opposed to the Emergency Services Unit or SWAT teams.

30. CIT officers are trained in de-escalation. They are taught that shouting at people in mental distress does not help; that surrounding them, threatening them, and rushing them is almost invariably counterproductive.

31. The results of implementing the CIT program in Memphis were dramatic. In the three years before CIT was instituted, mental-health-related calls led to injuries 35 times out of 100,000. In the three years after CIT was in place, that rate dropped to seven injuries in 100,000

calls.

32.     Over the past 25 years, versions of the program have been adopted by police departments in more than 2,000 communities in over 40 states. It has been adopted state-wide in Maine, Connecticut, Ohio, Georgia, Florida, Utah, and Kentucky.  Municipalities that have adopted CIT models, include, but are not limited to, Seattle, Albuquerque, Portland, Los Angeles, Houston, Rochester, and Chicago. It has won plaudits from Amnesty International, the National Alliance on Mental Illness, the U.S. Justice Department, and the International Association of Chiefs of Police. The Council of State Governments has been advocating for the adoption of CIT-like programs across the country.

33.     Despite the likelihood that its police officers will encounter persons in emotional crisis, the significant risk that such encounters will result in violent deaths of EDPs, and the effectiveness of the CIT program in reducing violence and death during such situations, the NRPD has failed to adopt a similar model or policies that would lessen the risk of death from such encounters.

34.     The failure of the NRPD and the City to adopt the CIT model or similar models proximately caused the injuries sustained by Plaintiffs' decedent.

35.     Upon information and belief, the failure of the NRPD and the City to mandate the involvement of mental health professionals, at all times, in incidents when the police are responding to EDP calls has led to violence and death in such encounters.

36.     Upon information and belief, the failure of the NRPD and the City to require 40-80 hours of training, to designate a specialized team of officers with mental health training to respond to EDP calls, and to require in-service training of officers who may be called to respond to EDP situations led to the injuries sustained by Mr. Cruz.

37.     As a result of the failure to adopt an adequate policy for responding to EDPs, the City has a policy or custom of not training or properly supervising its police officers or supervisors in responding to situations involving EDPs.

38.     The failure to have an adequate policy was a contributing factor in the death of Mr. Cruz because the City had no appropriate policy in place for such situations and had not properly trained or supervised its officers responding to the same.

39.     Said policies, training, and/or failure to adopt policies or to adequately train its employees as aforementioned resulted in the death of Mr. Cruz.

**Notice of Claim**

40.     A Notice of Claim on behalf of Elsa Cruz pursuant to New York General Municipal Law § 50-e was timely served upon Defendant City on June 26, 2013. More than thirty days have elapsed without the matter being resolved by the City. The Notice of Claim provided detailed information regarding the actions that the officers took during the incident with Mr. Cruz at his apartment, the injuries that Elsa Cruz sustained, and was sufficient to put the officers and the City on notice of the conduct that they were alleged to have engaged in.

41.     A Notice of Claim on behalf of Frances Cruz pursuant to New York General Municipal Law § 50-e was timely served upon Defendant City on June 26, 2013. More than thirty days have elapsed without the matter being resolved by the City. The Notice of Claim provided detailed information regarding the actions that the officers took during the incident with Mr. Cruz at his apartment, the injuries that Frances Cruz sustained, and was sufficient to put the officers and the City on notice of the conduct that they were alleged to have engaged in.

42.     A Notice of Claim on behalf of the Estate of Samuel Angel Cruz pursuant to New York General Municipal Law § 50-e was timely served upon Defendant City on July 15, 2013.

More than thirty days have elapsed without the matter being resolved by the City. The Notice of Claim provided detailed information regarding the actions that the officers took during the incident with Mr. Cruz at his apartment, the injuries that Mr. Cruz sustained, and was sufficient to put the officers and the City on notice of the conduct that they were alleged to have engaged in.

43.     On June 19, 2013, a Freedom of Information Law ("FOIL") request was made to the NRPD seeking documents relevant to the incident complained of herein.  To date, the NRPD has failed to provide any documents in response to said FOIL request, including, but not limited to, information regarding the names of the officers who responded.

## FEDERAL CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*(Pursuant to 42 U.S.C. §1983 for Violations*
*of the Fourth and Fourteenth Amendments)*

44.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

45.     At the time of the incident complained of herein, Police Officer Geertgens and John Doe Defendants were all employees of the Defendant City and acted under color of law as police officers.

46.     The aforesaid actions of said Defendants deprived Mr. Cruz of life and liberty without due process of law in violation of the Fourteenth Amendment.

47.     Said actions also deprived Mr. Cruz of his right to be secure in his person and home against unreasonable searches and seizures in violation of the Fourth Amendment.

48.     The aforesaid actions of said Defendants were an unreasonable and unnecessary use of excessive force and unlawful entry into Mr. Cruz's home and deprived him of rights,

privileges and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. §1983.

## SECOND CLAIM FOR RELIEF

*(Monell Claims Against Defendant City)*

49.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

50.     The injuries sustained by Mr. Cruz were the result of the failure of the City to adopt adequate policies in police encounters with persons in emotional crisis. As a result of its failure to adopt adequate policies, it also failed to properly train its officers on how to handle EDP situations even though the City knew or should have known that its officers were likely to encounter such situations and a failure to adopt adequate policies and/or properly train officers would result in constitutional deprivations.

51.     . As a result of the foregoing, the City failed to properly supervise the officers who responded to Mr. Cruz's apartment. The failures aforementioned evidence a deliberate indifference on the part of said Defendant to the constitutional rights of EDPs and Mr. Cruz.  As a result of said deliberate indifference, the officers and supervisors responding to Cruz's apartment violated his constitutional rights.

52.     The injuries sustained by Mr. Cruz were the result of the failure of said Defendant to have policies for appropriately responding to service calls involving EDPs.

53.     The injuries sustained by Mr. Cruz were the result of the deliberate indifference of said Defendant to properly create guidelines and procedures in connection with service calls involving EDPs.

54.     The injuries sustained by Mr. Cruz were the result of the deliberate indifference of

said Defendant to properly create alternative protocols when addressing service calls involving EDPs.

55.      The injuries sustained by Mr. Cruz were the result of the failure of said Defendant to train its police officers on how to appropriately respond to service calls involving EDPs.

56.      The injuries sustained by Mr. Cruz were the result of the failure of said Defendant to adequately supervise police officers in connection with service calls involving EDPs.

57.      The injuries sustained by Mr. Cruz were the result of the failure of said Defendant to train and/or supervise its officers in the implementation of the EDP policy.

58.      The injuries sustained by Mr. Cruz were the result of the deliberate indifference and failure of said Defendant to effectively establish proper protocols addressing the use of force when responding to EDPs.

59.      The injuries sustained by Mr. Cruz were the result of the failure of said Defendant to adequately train its officers in the continuum of force, the use of physical force, and deadly force EDP cases.

60.      As a result of the aforementioned policies, practices, custom, usages, and failures of said Defendant, and the deliberate indifference to the duty to have such policies to ensure the safety of the residents of the City, Mr. Cruz sustained the injuries and deprivations aforementioned in violation of 42 U.S.C. §1983 and the rights secured by the Fourth and Fourteenth Amendments.

### THIRD CAUSE OF ACTION

*(Supervisory Liability )*

61.      Plaintiffs incorporate the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

62.     John Doe Defendants, who performed supervisory functions at the scene, were responsible for supervising the police officers who responded to the scene at Mr. Cruz's residence. Said Defendants failed to properly supervise said officers and took no actions that would have prevented the injuries sustained by Mr. Cruz.

63.     As a direct and proximate cause of said Defendants failure to properly supervise their subordinates, Mr. Cruz's constitutional rights were violated as aforementioned in violation of 42 U.S.C. §1983.

## FOURTH CLAIM FOR RELIEF

*(Pursuant to 42 U.S.C. §1983 for Violations*
*of the Fifth and Fourteenth Amendments)*

64.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein

65.     The actions of Defendants deprived Mr. Cruz's daughter, Frances Cruz, of her right of familial companionship and society by causing the wrongful death of her father.

66.     As a result of the actions and/or negligence of agents or employees of the City of New Rochelle and the NRPD, Frances Cruz seeks damages for pecuniary loss, loss of nurture, care, guidance, and training, and loss of financial support and inheritance.

67.     Said actions caused a deprivation of Frances Cruz's rights under the Fifth and Fourteenth Amendments of the United States Constitution and render defendants liable to her under 42 U.S.C. §1983.

68.     The actions of Defendants deprived Mr. Cruz's wife, Elsa Cruz, of her right of companionship and society by causing the wrongful death of her husband.  Said actions also caused severe emotional distress to Elsa Cruz and caused her to suffer a loss of consortium, in

additional to emotional and psychological injuries.

69.     As a result of the actions and/or negligence of agents or employees of the City of New Rochelle and the NRPD, Elsa Cruz seeks damages for her emotional injuries as aforementioned, pecuniary loss, loss of consortium, and loss of inheritance.

70.     Said actions caused a deprivation of Elsa Cruz's rights under the Fifth and Fourteenth Amendments of the United States Constitution and render Defendants liable to her under 42 U.S.C. §1983.

## STATE CLAIMS FOR RELIEF

### FIFTH CLAIM FOR RELIEF

*(For Conscious Pain and Suffering Against All Defendants)*

71.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

72.     Defendant Geertgens and certain of the John Doe Defendants without just cause, or provocation, used force and/or deadly physical force against Mr. Cruz. The use of such force was not justified or warranted under the circumstances and constituted unreasonable and unnecessary force.

73.     The use of such force did not immediately cause Mr. Cruz's death. As a result, he suffered and experienced a fear of impending death, severe emotional distress, and conscious pain and suffering.

74.     The Defendant City is responsible for the actions of Police Officer Steven Geertgens and said John Doe Defendants that were taken in the scope of their employment as police officers.

## SIXTH CLAIM FOR RELIEF

### *(For Wrongful Death Against All Defendants)*

75.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

76.     Police Officer Steven Geertgens, acting within the scope of his employment, caused the death of Mr. Cruz by the use of a firearm, without cause or justification.

77.     Said actions render him liable for the wrongful death of Mr. Cruz.

78.     Defendant City is responsible for the actions of said Defendants that were taken in the scope of their employment as police officers.

## SEVENTH CLAIM FOR RELIEF

### *(For Assault and Battery Against All Defendants)*

79.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

80.     The actions of Police Officer Steven Geertgens and the John Doe Defendants were intentional, malicious and were committed with wanton disregard for the rights of Mr. Cruz.

81.     The actions of said Defendants were unjustified and unnecessary in the performance of their duties as police officers and were unreasonable, unwarranted and constituted an excessive use of force.

82.     The actions aforesaid constituted unlawful assaults and batteries upon Mr. Cruz.

83.     The said Defendants acted in concert and conspired to commit said assaults and batteries upon Mr. Cruz.

84.     As a result of said conduct of said Defendants, Mr. Cruz sustained serious and

severe injuries, resulting in his death.

85.     Defendant City is responsible for the actions of said Defendants as the acts were committed within the scope of their employment as police officers.

## EIGHTH CLAIM FOR RELIEF

### *(For Negligence Against All Defendants)*

86.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

87.     The individual officers, acting within the scope of their employment, negligently discharged their duties and thereby caused Mr. Cruz to sustain the injuries and deprivations aforementioned.

88.     The acts of negligence of said officers included, but are not limited to, repeatedly and loudly banging on Mr. Cruz's apartment door, forcibly breaking the apartment door, and ignoring Elsa Cruz's requests to speak to her husband.  Subsequently, Police Officer Steven Geertgens shot Mr. Cruz with a firearm in the chest. These negligent acts caused Plaintiff Elsa Cruz emotional distress as she witnessed the actions of these employees that ultimately caused the death of Mr. Cruz.  In addition, these acts caused Mr. Cruz's daughter, Plaintiff Frances Cruz, loss of nurture, care, guidance, and training, and loss of financial support and inheritance.

89.     Defendant City is responsible for the negligence of its officers committed within the scope of their employment.

90.     Defendant City was negligent by failing to properly train or supervise its officers on how to properly respond to service calls involving emergency medical situations or involving EDPs.

91.     Defendant City was negligent by failing to properly train or supervise its police

officers in the use of physical force, deadly force, or the continuum of force.

92.     By the actions described above, each and every Defendant, jointly and severally, has committed the foregoing wrongful acts against Mr. Cruz, which are tortious under the Constitution and laws of the State of New York.

93.     The aforementioned acts and conduct proximately caused the injuries sustained by Mr. Cruz and violated the statutory and common law rights guaranteed to him by the Constitution and the laws of the State of New York.

## NINTH CLAIM FOR RELIEF

### *(For Loss of Companionship and Consortium Against All Defendants)*

94.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

95.     The actions aforesaid and complained of herein deprived Elsa Cruz of rights arising under the common law of the State of New York for the death of her husband.  Such resulting claims include, but are not limited to, intentional infliction of emotional distress, negligent infliction of emotional distress, loss of companionship, and loss of consortium.

96.     The actions aforesaid and complained of herein deprived Frances Cruz of rights arising under the common law of the State of New York for the death of her father.  Such resulting claims, include, but are not limited to, loss of nurture, care, guidance and training, loss of financial support and inheritance.

97.     Each Defendant officer is responsible for the losses sustained by Elsa and Frances Cruz, as their actions proximately caused the injuries complained of herein.

98.     The City is responsible for said injuries as they were occasioned by the actions of police officers employed by the City and acting within the scope of their employment.

**PUNITIVE DAMAGES**

99.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

100.    The acts of the individual Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Mr. Cruz without regard for his well-being and were based on a lack of concern and ill-will towards Mr. Cruz. Such acts therefore warrant an award of punitive damages.

101.    The City is responsible for the actions of its employees as complained of herein under the doctrine of *respondeat superior.*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.    An order requiring the City to institute and implement adequate policies and procedures with respect to police responses to situations involving EDPs;

b.    An order requiring the City to adopt the Crisis Intervention Team model or a similar program for responding to EDP calls;

c.    An order requiring the City to deploy NRPD officers to EDP calls with appropriate and adequate supervision;

d.    Compensatory damages in an amount of twenty one million dollars;

e.    Punitive damages in an amount to be determined at trial;

f.    An award of the costs and expenses of this action including attorneys' fees to the Plaintiffs pursuant to 43 U.S.C. §1988; and

g.    Any such other and further relief as this Court may deem appropriate.

## A JURY TRIAL IS DEMANDED

DATED:      New York, New York
            October 22, 2013

                              NEWMAN FERRARA LLP


                        By: _____
                            Randolph M. McLaughlin
                            rmclaughlin@nfllp.com
                            Debra S. Cohen
                            dcohen@nfllp.com
                            Jeffrey M. Norton
                            jnorton@nfllp.com
                            1250 Broadway, 27th Floor
                            New York, New York 10001
                            Tel: 212-619-5400
                            Fax: 212-619-3090


                            Mayo Bartlett
                            mgb@mayobartlett.com
                            Abdulwali Muhammad
                            wm@walimuhammadlaw.com
                            81 Main Street
                            Suite 118
                            White Plains, New York 10601
                            Tel: 914-224-3086
                            Fax: 914-468-6333


                            *Counsel for Plaintiffs*